IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KEVIN JOHN BRADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 25-730-CFC-LDH |
| FRANK BISIGNANO, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

FILED

JUL 3 1 2026

U.S. DISTRICT COURT DISTRICT OF DELAWARE

**REPORT & RECOMMENDATION**

Plaintiff Kevin John Brady ("Plaintiff") appeals from an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). (D.I. 1). This Court has jurisdiction under 42 U.S.C. § 405(g). Pending before the Court are the parties' cross-motions for summary judgment, which have been fully briefed. (D.I. 9, 10, 12, 13, 14). For the following reasons, I recommend that Plaintiff's motion for summary judgment (D.I. 9) be DENIED, and Defendant's cross-motion for summary judgment (D.I. 12) be GRANTED.

## I.   LEGAL STANDARD

Courts have plenary review over the Commissioner's legal conclusions but review the Commissioner's factual findings for "substantial evidence." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Benyhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high.   Substantial evidence . . . is 'more than a mere scintilla.'"

*Biestek*, 587 U.S. at 103.  In reviewing whether substantial evidence supports the Commissioner's

findings, courts may not "re-weigh the evidence or impose their own factual determinations."

*Chandler*, 667 F.3d at 359; *see also Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014).   In

other words, reviewing courts must affirm the Commissioner if substantial evidence supports the

Commissione's decision, even if they would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential

inquiry.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).   The Third Circuit has previously explained this

sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.   If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  The claimant bears the burden of demonstrating an inability return to his past relevant work. If the claimant does not meet the burden the claim is denied.

> If the claimant is unable to resume his former occupation, the evaluation moves to the final step.  At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual

> functional capacity. The ALJ must analyze the cumulative effect of
> all the claimant's impairments in determining whether he is capable
> of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545–46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

## II.   BACKGROUND

On April 5, 2021, Plaintiff filed for DIB due to a back injury, alleging disability beginning March 27, 2021. (D.I. 6 (hereinafter, "Tr.") at 17). Plaintiff's date of last insured ("DLI") is June 30, 2025. (*Id.*). Plaintiff's claim was denied twice: initially on June 7, 2022, and upon reconsideration on April 7, 2023. (*Id.*). Following these denials, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On June 10, 2024, a telephonic hearing was held before ALJ Jennifer Spector, who ultimately denied Plaintiff's request for benefits. (*Id.* at 10–19). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council in May 2025. (*Id.* at 1–3). Plaintiff subsequently initiated this action seeking judicial review of the ALJ's decision. (D.I. 1).

## III.   DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence because she improperly evaluated and rejected two medical opinions. (D.I. 10 at 2). Specifically, Plaintiff argues that the ALJ improperly rejected the opinions of Nurse Practitioners ("NP") Sarah Robinson and Martone Moody. (*Id.*). I disagree.

I begin by reiterating it is not for me to "re-weigh the evidence or impose [my] own factual determinations" even if I disagree with the determination of the ALJ. *Chandler*, 667 F.3d at 359. Rather, I can only determine whether the ALJ's opinion is supported by substantial evidence; a bar

which is "not high" and is "only more than a mere scintilla." When determining the persuasiveness of any medical opinion being reviewed, an ALJ must, at minimum, discuss the "most important" factors of consistency and supportability. 20 C.F.R. § 404.1520c(b)(2)–(3). I analyze the ALJ's rationale and credibility determination of each NP in turn.

### a. NP Moody

Plaintiff argues that the ALJ failed to "'discuss negative findings, while relying upon positive findings, [which] is a classic 'cherry pick,' and an inappropriate basis upon which to wholesale reject a medical opinion.'" (D.I. 10 at 10) (citing *Blackman v. Kijakazi*, 2022 WL 2791746, at *15 (E.D. Pa. July 15, 2022). In doing so, Plaintiff argues, the ALJ failed to "provide any meaningful traceable path from the record to the rejection of NP Moody's opinion." (*Id.* at 10).

As to NP Moody, the ALJ's opinion is supported by substantial evidence. First, the ALJ engaged in a lengthy recitation of Plaintiff's medical history as it relates to his lower back pain. (*Id.* at 22–25). The ALJ noted that Plaintiff had an initial surgical consultation on December 14, 2020, with complaints of "severe pain in the back and right greater than left legs, as well as morning stiffness." (*Id.* at 23). Imaging revealed degenerative disc disease, facet arthropathy, disc disease with herniation, and moderate to severe nueral forminal stenos with bony impingement. (*Id.*). Attempts to treat Plaintiff conservatively failed. (*Id.*).

Thereafter, Plaintiff had a decompressive laminectomy bilaterally at L4–5 and L5–S1, and fusions at L4–5 and L5–S1 in May of 2021, and reported that he was "'doing fantastic' with resolution of his nerve pain, improving lower back pain, and no issues with walking." (*Id.* at 23). The ALJ noted that in May of 2022, Plaintiff again began experiencing some lower back pain with radiculopathy, and had a slow but steady gait. (*Id.*). Plaintiff denied the use of any medically

prescribed devices and there was no muscle atrophy, and Plaintiff demonstrated full strength in his upper and lower extremities with normal range of motion. (*Id.*). Following more pain, tenderness, poor balance, a right leg limp, and an inability to walk on his toes and squat, among other symptoms, Plaintiff returned for a surgical evaluation in October of 2023. (*Id.* at 23). At the examination, Plaintiff described "disabling back right and buttock pain," as well and numbness and pins and needles resulting in the intermittent use of a cane. (*Id.*). Thereafter, in November of 2023, the ALJ noted that the Plaintiff had a revision of the fusion. (*Id.*). The ALJ noted that following the revision, Plaintiff's medical records "have typically noted a normal gait and ambulation without any mention of assistive devices, no tenderness, and intact sensation with reference to limited lumbar range of motion only during the immediately post-operative period." (*Id.*). The ALJ noted that Plaintiff's post-revision medical records revealed a "significant improvement" in pain levels, as well as a "return to activities, such as traveling and driving." (*Id.*).

With this context, the ALJ then considered the findings of NP Moody. In doing so, as required, the ALJ did not give any specific evidentiary weight, including controlling weight, to any prior medical findings. Instead, the ALJ considered NP Moody's medical opinions alongside the record evidence. The ALJ noted that NP Moody examined Plaintiff in May of 2022. (*Id.* at 25). At the examination, NP Moody noted Plaintiff's inability to sit, stand and walk for less than six hours; only lift and carry less than 10 pounds occasionally; never balance, climb, crawl, crouch, or stoop; only occasionally engage in reaching, handling, fingering, and feeling activities; and an inability to work at height, with heavy machinery, or in extreme temperatures. (Tr. at 25, 528–29).

The ALJ considered the limitations prescribed by NP Moody and noted that such opinions were contrary to NP Moody's own findings, including that Plaintiff had a "steady gait, no atrophy, full strength and intact sensation throughout, normal range of motion of the back, and intact

5

dexterous activities." (*Id.* at 25). The ALJ also considered NP Moody's opinions against the record as a whole and found them to be inconsistent, as NP Moody's opinions conflicted with "reports of significant improvement in pain and function following the May 2021 surgery." (*Id.*). The ALJ further found NP Moody's opinion inconsistent with the record because it did not account for Plaintiff's November 2023 surgery which, according to the records, went well and afforded Plaintiff with relief. (*Id.*). In considering the foregoing, the ALJ provided "some reason for discounting the evidence [she] reject[ed]." *Tomlinson v. Saul*, No. CV 18-859 (MN), 2019 WL 4671191, at *9 (D. Del. Sept. 25, 2019) (internal quotation omitted). As to consistency, the ALJ provided her rationale supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotation omitted).

By contrast, Plaintiff effectively asks this Court to re-weigh and reconsider the evidence before the ALJ. (*See* D.I. 10 at 10–12) (citing extensively to the evidence from Tr., with no case law for support, in arguing that the ALJ improperly engaged with the record). The ALJ reviewed NP Moody's opinion and determined that her limitations were undercut by other evidence—Dr. Frank P. Cammissa's office treatment records from November 24, 2020, through May 5, 2021 (2F), and NP Jesica V. Hammond's medical evidence of record from May 1, 2020, through April 15, 2024 (14F)—in the record. (Tr. at 25, 337–419, 584–797). Admittedly a bit pithy, but sufficient, the ALJ provided rationale for her rejection of NP Moody's opinion as inconsistent, and nothing contained in either record has been mischaracterized; the ALJ did not "reject evidence for no reason or the wrong reason." *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019).

Accordingly, based on the foregoing, the ALJ's determination of inconsistency and lack of supportability in determining a lack of persuasiveness for the RFC opined by NP Moody was based on substantial evidence.

### b. NP Robinson

Plaintiff's arguments regarding the ALJ's review of NP Robinson's opinions are similar to those for NP Moody. The ALJ noted the limitations on which NP Robinson opined for Plaintiff: limited to frequent sitting, standing, and walking limited to less than four hours, and lifting and carrying 10 pounds occasionally for less than four hours, both with "frequent breaks[.]" (Tr. at 25). But, the ALJ also noted that a restriction to less than four hours or standing/and or walking is not consistent with the "majority of examination findings throughout the record, including early reports of significant walking and updated post-operative records reflecting normal ambulation" (citing exhibits 2F and 14F). (*Id.* at 25). The ALJ further noted that NP Robinson's opinion is internally inconsistent, "as it opines both that the claimant can frequently sit, stand and/or walk, but also that he can only perform these activities for less than for hours per day, which would be closer to occasional." (*Id.*). Far from substituting her own judgment, the ALJ did exactly as the law instructs her to do. The ALJ need not detail every piece of evidence she considered and compare each medical opinion, and the ALJ must often make credibility determinations that fall between numerous medical opinions before them regarding a claimants RFC. *See Durden v. Colvin*, 191 F. Supp. 3d. 429, 455 (M.D. Pa. 2016) (gathering cases).

Plaintiff relies on *Plummer v. Apfel* to say that the "ALJ is merely substituting his [sic] own judgment for that of the examining physician which is improper." 186 F.3d 422, 427 (3d Cir. 1999); (D.I. 10 at 13). Plaintiff notes that ALJs may reject "opinions on the basis of contradictory medical evidence," which is what the ALJ did here. (D.I. 10 at 13). The ALJ did not, as Plaintiff

argues "fail[] to engage with the examination in a way as to allow the court to understand" why the ALJ reached the conclusion she did. (D.I. 10 at 13). As with NP Moody, Plaintiff asks this court to delve into the record and make a separate factual determination, rather than finding it is reasonable for the ALJ to conclude that NP Robinson's opinion lacked supportability.

Further, Plaintiff argues that because the opinions of NP Moody and NP Robinson "are very similar concerning the limitations . . . the ALJ should have engaged with these similarities." (*Id.* at 15). But Plaintiff misconstrues the standard of review by asserting that "a reasonable mind may reach a different conclusion" (*see id.* at 16); the actual standard is "whether a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (internal quotation omitted). The ALJ's opinion is reviewed "as a whole," and she engaged in robust discussion of numerous medical opinions as well as consideration of the overall medical record and treatment notes in her decision. (*See* Tr. at 22–25).

As above, the ALJ cited numerous instances throughout the record that Plaintiff presented with a normal gait, could walk without difficulty, had full strength, and displayed intact, and noted that Plaintiff required a subsequent surgery in 2023 to correct issues present after his initial one. (Tr. at 23–24, 305, 361, 425, 494, 510, 545, 631, 650, 688, 713). The ALJ concluded that NP Robinson's opinion was inconsistent with the overall medical record before her, which she analyzed in detail prior to her specific analysis of NP Robinson's opinion. (Tr. at 22–24). The significant and detailed analysis of the record is enough to form "the touchstone [of] a logical bridge from the evidence to the ALJ's conclusion." (D.I. 10 at 16) (*quoting Erica S. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 1269788, at *7 (D.N.J. Apr. 28, 2022) (internal quotation omitted).

Accordingly, the ALJ's determination of inconsistency and lack of supportability in determining a lack of persuasiveness for the RFC opined by NP Robinson was based on substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's motion for summary judgment be DENIED and that Defendantss cross-motion for summary judgment be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: July 31, 2026

_____
Laura D. Hatcher
United States Magistrate Judge